## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Great Gulf Corporation,

Case No. 20-cv-1835 (PJS/TNL)

Plaintiff/Counter Defendant,

v.

**ORDER**

William Talford Graham,
R. P. Air, Inc., and
Randolph M. Pentel,

Defendants/Counterclaimants.

Elizabeth Marie Cadem, Erik F. Hansen, and Kirk Tisher, Burns & Hansen, P.A., 8401 Wayzata Boulevard, Suite 300, Minneapolis, MN 55426; and Fred A. Schwartz, Shahady Wurtenberger, P.A., 200 East Palmetto Park Road, Suite 103, Boca Raton, FL 33432 (for Plaintiff/Counter Defendant); and

Jacob B. Sellers and Justice Ericson Lindell, Greenstein Sellers PLLC, 825 Nicollet Mall, Suite 1648, Minneapolis, MN 55402 (for Defendants/Counterclaimants).

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Great Gulf Corporation's ("Great Gulf") Motion for a Protective Order, ECF No. 133, and Defendants/Counterclaimants William Talford Graham, R. P. Air, Inc., and Randolph M. Pentel's (collectively, "the Pentel Parties") Second Motion to Enforce Court Order and for Sanctions, ECF No. 142. A hearing was held on July 11, 2022. *See generally* ECF No. 159. Fred A. Schwartz and Erik F. Hansen appeared on behalf of Great Gulf. Jacob B. Sellers appeared on behalf of the Pentel Parties.

1

## II. BACKGROUND

This is the third round of motion practice related to taking the 30(b)(6) deposition of Great Gulf and the deposition of its "authorized representative and agent" Troy Wilson. Compl. ¶ 18, ECF No. 1; Aff. of Troy Wilson ¶ 1, ECF No. 88; *see also* Aff. of Troy Wilson ¶ 1 (describing self as "the corporate representative for Plaintiff Great Gulf Corporation"), ECF No. 157 [hereinafter "Third Wilson Aff."]. Great Gulf "is a Delaware business corporation with a principal place of business in Ontario, Canada." Compl. ¶ 1. Wilson is a Canadian citizen "and resident of the Canadian province of Ontario." Wilson Aff. ¶ 2.

### A. Remote Depositions Permitted Under Certain Conditions

In mid-November 2021, the parties were before this Court on whether the depositions of Great Gulf, Wilson, and Laila Alizadeh (Great Gulf's "sole shareholder," *see, e.g.*, Compl. ¶ 2) were to be taken in person in Minnesota or remotely in Canada. *See generally* ECF Nos. 80-92. The Court permitted the depositions to occur remotely. *See generally* Nov. 15, 2021 Ct. Minutes, ECF No. 92. At the same time, the Court observed that the Pentel Parties' concern as to the potential for surreptitious conduct by Great Gulf, Wilson, and Alizadeh was not entirely speculative. In response to the Pentel Parties' understandable concern over the absence of safeguards to prevent such tactics, the Court ordered that the remote depositions of Great Gulf, Wilson, and Alizadeh be subject to the following requirements to ensure that these depositions were conducted fairly and concerns over third parties supplying answers or information or otherwise prompting a deponent during examination were minimized:

2

- First, the depositions of Wilson, Alizadeh and Great Gulf's 30(b)(6) designee must take place in a room in which each deponent is alone other than any court reporter or videographer retained for purposes of conducting the deposition. The room must be private such that the deponent cannot see or otherwise communicate with anyone else other than the individuals participating in and appearing personally at the deposition, all of whom shall be identified on the record at the outset of the deposition. Compliance with this requirement may be confirmed, at the Pentel Parties' election, by a separate video feed or feeds showing the entirety of the room, the deponent, and the deponent's computer screen(s) throughout the duration of the deposition.

- Second, the deponent must leave any and all electronic devices (including but not limited to cellular phones) other than those devices inherent to the taking of the remote deposition outside of the room, which may be visually verified on video at the Pentel Parties' request prior to the commencement of the deposition.

- Third, Great Gulf's 30(b)(6) designee, Wilson and Alizadeh shall be prohibited from communicating with anyone by electronic means for the duration of the deposition, including for purposes of example and not limitation, using text, e-mail, and chat programs. Any private chat function of the deposition software shall be disabled.

Nov. 15, 2021 Ct. Minutes at 1-2.  The Court cautioned the parties that

> [s]hould [improper] conduct be found to have occurred [during a deposition], the Court w[ould] not hesitate to subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that the Court may from time to time

3

deem appropriate.

Nov. 15, 2021 Ct. Minutes at 2.

### B.  Failure to Attend Arranged Remote Depositions

The Pentel Parties "made a number of arrangements in preparation for the depositions of Great Gulf's 30(b)(6) designee, Wilson, and Alizadeh."  May 27, 2022 Mot. Hearing Tr. 19:21-23, ECF No. 124 [hereinafter "Tr."].[1]  They (1) "rented an office building in Ontario, Canada"; (2) "had a room in which the depositions were to be conducted outfitted with cameras and high-speed Internet to ensure the entirety of the room could be viewed during the deposition to confirm compliance with the protocols"; (3) "had a computer installed in the room free of texting, chat programs, or other software that could be used to communicate with third parties"; and (4) "had a court reporter and videographer present at the location to ensure that no one other than the deponent accessed the room in which the depositions were to be conducted, could view or communicate with the witness from outside the room and ensure that the deponent was not accessing his or her phone during the deposition."  Tr. 19:23-20:11.  "These arrangements resulted in $4,233 in room reservation, court reporter, transcript, and videographer fees."  Tr. 20:13-15.

Wilson's deposition was noticed for March 29, 2022.  Tr. 20:18.  Great Gulf's 30(b)(6) deposition (for which Wilson was to serve as the designee) and Alizadeh's deposition were both noticed for the following day, March 30.  Tr. 20:20-23.  All of the

---

[1] Although the transcript has been temporarily sealed to allow for the process of redacting any personal identifiers, *see generally* D. Minn. LR 5.5, any notice of intent to request redaction was due June 13, 2022, and no such notice was filed.  ECF No. 124.

depositions were noticed to take place at the office building in Ontario, Canada.  *See generally* Exs. A & C to Aff. of Jacob B. Sellers in Support of Motion to Enforce Court Order and for Sanctions, ECF No. 104 [hereinafter "Sellers Aff."].

Around 8:00 p.m. on March 28, Great Gulf's counsel informed counsel for the Pentel Parties "that he had just received a communication from Wilson stating that Alizadeh had contracted COVID-19 and Wilson ha[d] cold symptoms and a low fever." Tr. 21:3-7; *see generally* Ex. E to Sellers Aff., ECF No. 104.  In his communication, "Wilson indicated that he could proceed with the deposition the next day from home rather than the noticed location."  Tr. 21:7-10; *see generally* Ex. E to Sellers Aff.

"The next day, March 29, Wilson appear[ed] remotely from what he described as his library in Elliot Lake, Ontario."  Tr. 21:11-13; *see* Ex. F to Sellers Aff., ECF No. 104 at 29-31.[2]  Great Gulf's initial disclosures under Rule 26(a)(1), however, "provided a Barrie, Ontario address for Wilson."  Tr. 21:14-15; *see* Ex. H to Sellers Aff., ECF No. 104 at 39.  Further, "according to the Pentel [P]arties, independent video surveillance they ha[d] obtained show[ed] Wilson and his spouse residing at the Barrie address."  Tr. 21:15-17; *see* Pentel Parties' Mem. in Supp. of Motion to Enforce Court Order and for Sanctions at 11, ECF No. 107.  "The Elliot Lake property was approximately four and a half hours away from the Barrie address."  Tr. 21:18-20; *see generally* Ex. B to Aff. of Randy Pentel in Support of Motion to Enforce Court Order and For Sanctions, ECF No. 108 [hereinafter "Pentel Aff."].    Additionally, "the Pentel [P]arties subsequently

---

[2] In the interests of clarity, the Court cites to the page numbers generated by the Court's electronic filing system for all exhibits.

uncovered information indicating that the Elliot Lake property Wilson appeared from was owned by Hazelton Homes II, Inc.[,] of which Alizadeh is the sole shareholder." Tr. 22:3-6; *see, e.g.*, Ex. D to Pentel Aff., ECF No. 108 at 17, 23, 29, 30; *see generally* Ex. C to Pentel Aff., ECF No. 108. "The following day, March 30, Wilson again appeared remotely from his library at the Elliot Lake property as Great Gulf's 30(b)(6) designee."[3] Tr. 22:8-10; *see* Ex. I to Sellers Aff., ECF No. 104 at 43-44. "Wilson . . . stated in an affidavit that he was suffering from symptoms of COVID-19 at the time." Tr. 22:11-12; *see generally* Aff. of Troy Wilson, ECF No. 111 [hereinafter "Second Wilson Aff."].

"Alizadeh did not appear at all on March 30." Tr. 22:14; *see generally* Ex. G to Sellers Aff., ECF No. 104. "A week after the deposition, the Pentel [P]arties received a letter from Alizadeh's physician."[4] Tr. 22:15-17; *see generally* Ex. A to Affidavit of Laila Alizadeh, ECF No. 112-1. The "letter was dated March 29, the day before the deposition, and indicated that Alizadeh had tested positive for COVID-19 on March 27, three days before her deposition was scheduled to occur." Tr. 23:1-4; *see* Ex. A to Alizadeh Aff, ECF No. 112-1 at 1. "Alizadeh's own affidavit indicate[d] that she was diagnosed with COVID-19 on March 2[8], two days before her deposition was scheduled to occur." Tr. 23:5-7; *see* Alizadeh Aff. ¶ 3.

### C. May 27, 2022 Hearing & Oral Order

The parties appeared before the Court on May 27, 2022, in connection with a

---

[3] At the May 27, 2022 hearing, the Court noted that, "[r]egardless of whether Wilson consider[ed] one or both of the [Barrie and Elliot Lake] properties or even some other property to be his residence, the undisputed fact [wa]s that he did not appear in person at the noticed deposition location." Tr. 21:23-22:1.

[4] As the Court noted at the May 27 hearing, this letter was purportedly attached as Exhibit J to the Sellers Affidavit. Tr. 22:20-21; *see* Sellers Aff. ¶ 11. "No Exhibit J, however, was filed." Tr. 22:23; *see generally* ECF No. 104. A copy of the letter was attached to Alizadeh's affidavit.

motion for sanctions filed by the Pentel Parties. *See generally* ECF Nos. 101-13. At the hearing, the Court asked counsel for the Pentel Parties whether, if the Court ordered Great Gulf's 30(b)(6) designee, Wilson, and Alizadeh to sit for their depositions within the next 7 days, that would realistically be enough time for the same prior arrangements to be made for the depositions to occur, noting it was also a holiday weekend. Tr. 4:17-5:21. Counsel for the Pentel Parties thought such arrangements could be made. Tr. 4:24-25, 5:20-21.

The Court granted the Pentel Parties' motion in part on the record the same day. *See generally* May 27, 2022 Ct. Minutes, ECF No. 113. The Court "f[ound] it dubious that both Wilson and Alizadeh contracted COVID-19 at the 11th hour before their painstakingly arranged depositions were to occur. It [wa]s even more dubious that Wilson happened to be at a property owned by Alizadeh at the time." Tr. 24:13-17. The Court also "f[ound] it curious that Alizadeh did not immediately notify counsel for Great Gulf before her deposition was scheduled to occur or upon her purported diagnosis the next day. Instead, Alizadeh appear[ed] to have informed Wilson, who then informed Great Gulf's counsel." Tr. 24:17-22.

The Court observed that "[t]his confluence of events strains credulity," and, "[b]ased on the litigation history of this case and the record before the Court," it was the Court's "assessment . . . that Wilson and Alizadeh [we]re not credible for purposes of th[e] motion and that their failure to appear in compliance with the deposition notices was not substantially justified." Tr. 24:23-25:3. The Court also noted that it had previously warned the parties that "it would not hesitate to subject the non-complying party, non-

7

complying counsel, and/or the party such counsel represents to any and all appropriate remedies, sanctions, and the like." Tr. 25:4-8.

In relevant part,[5] the Court ordered Great Gulf, Wilson, and Alizadeh to "sit for their depositions in person in Canada within the next seven days," stating "[t]o be clear, that is on or before Friday, June 3." Tr. 25:15-18; *accord* May 27, 2022 Ct. Minutes at 1. The Court noted that, in opposing the sanctions motion, both Wilson and Alizadeh stated, under penalty of perjury, that they would have fully cooperated with the Pentel Parties to reschedule their depositions. Tr. 25:9-11; *see* Second Wilson Aff. ¶ 13 ("Should Defendants have made an effort to reschedule the deposition, I would have fully cooperated."); Alizadeh Aff. ¶ 8 ("Should Defendants have made an effort to reschedule the deposition, I would have fully cooperated."). The Court informed Wilson and Alizadeh that this was "their one and only chance to make good on that representation." Tr. 25:12-13.

The Court further ordered that "[i]n the event Great Gulf, Wilson, or Alizadeh fail to appear in person in Canada for their depositions within the next seven days, the non-compliant person or entity shall be prohibited from offering any evidence by way of testimony or affidavit for any purpose in this case." Tr. 26:6-10; *accord* May 27, 2022 Ct. Minutes at 1-2. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii), (d)(3). The parties were again reminded that

---

[5] The Court also ordered payment of the expenses incurred in arranging the previously noticed depositions and the reasonable attorney fees and costs incurred by the Pentel Parties in bringing the motion following Great Gulf, Wilson, and Alizadeh's first failure to appear in compliance with their noticed depositions. May 27, 2022 Ct. Minutes at 1. The amount of such attorney fees and costs is currently pending before the Court. *See generally* ECF Nos. 125, 141. The Pentel Parties' motion was otherwise denied. May 27, 2022 Ct. Minutes at 2.

failure to comply within any provision of this order or any other prior consistent order shall subject the non-complying party – non-complying counsel, and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation, assessment of costs, fines, and attorney's fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Tr. 26:15-27:2; *accord* May 27, 2022 Ct. Minutes at 2.

### D. Repeating Prior Deposition Arrangements

Defendant Randolph M. Pentel had made the prior deposition arrangements, Pentel Aff. ¶ 2. The May 27 hearing took place in the afternoon, on the Friday before the Memorial Day holiday weekend. "Immediately following the . . . hearing, at which [Pentel was present], and prior to [his] leaving the courthouse, [Pentel] contacted the court reporter, videographer, office manager and logistic companies [he] had engaged for purposes of the previously noticed depositions." Aff. of Randy Pentel ¶ 3, ECF No. 145 [hereinafter "Second Pentel Aff."]; *see also id.* ¶ 6. Pentel "worked over the entirety of the Memorial Day weekend," communicating with vendors to make arrangements at the same location so as to comply with the June 3 deadline. Second Pentel Aff. ¶ 6.

On Sunday, May 29, Great Gulf's counsel contacted counsel for the Pentel Parties, stating that "[Wilson] is travelling for work this next week." Ex. B to Aff. of Jacob B. Sellers, ECF No. 146-2 at 5 [hereinafter "Second Sellers Aff."]. (At the July 11 hearing, the Court learned that the work being referred to was Wilson's wife's employment, not his own.) Great Gulf's counsel stated that "June 1st and 2nd are available" and "[d]uring

that time [Wilson] will be in the city of Elliot Lake, Ontario."  Ex. B to Second Sellers Aff., ECF No. 146-2 at 5.  Great Gulf's counsel offered to assist in "locating a law office or conference space for the deposition."  Ex. B to Second Sellers Aff., ECF No. 146-2 at 5.

The next morning, Monday, May 30, the Pentel Parties' counsel responded that they were "attempting to secure a location and arrange[] the logistics that were in place las[t] time," but were "having trouble doing so" given the timeframe.  Ex. B to Second Sellers Aff., ECF No. 146-2 at 5.  The Pentel Parties' counsel stated they would not be working around Wilson's or Alizadeh's schedules and expected them to appear in accordance with the deposition notices.  Ex. B to Second Sellers Aff., ECF No. 146-2 at 5.

As of midday Monday, there was still uncertainty as to vendor availability due to transcript formatting differences "between the United States and Canada and the way each formats their transcripts for their respective courts" and the "few reporting firms in Canada that had the software necessary to provide transcripts in the form used in the United States."  Second Pentel Aff. ¶ 7.  By "late Monday," Pentel was able to confirm "that all of the vendors could make Wednesday, June 1 and Thursday, June 2 work."  Second Pentel Aff. ¶ 7.  Around 5:00 p.m., the Pentel Parties noticed the depositions of Great Gulf and Wilson to take place on June 1 at the same location as their previously noticed depositions.[6]  *See generally* Ex. C to Second Sellers Aff., ECF No. 146-3.  Great

---

[6] The Pentel Parties also noticed Alizadeh's deposition for June 2.  *See generally* Ex. C to Second Sellers Aff.  "The deposition order was not random."  Pentel Parties' Mem. in Supp. of Second Mot. at 5, ECF No. 144.  Having reviewed prior matters in which Alizadeh and Wilson were involved, the Pentel Parties' counsel perceived that it

Gulf's 30(b)(6) deposition was to "commenc[e] at 9:00 a.m.," Ex. C to Second Sellers Aff., ECF No. 146-3 at 7, and Wilson's deposition was to "commenc[e] at 1:00 p.m.," Ex. C to Second Sellers Aff., ECF No. 146-3 at 3.  Notably, in connection with the previously noticed 30(b)(6) deposition of Great Gulf at the same location, which had been scheduled to "commenc[e] at 1:00 p.m.," Ex. A to Sellers Aff., ECF No. 104 at 6, the parties confirmed with each other that this was "noon MN time and 1 p.m. Canadian time," Ex. H to Second Sellers Aff., ECF No. 146-8 at 2.  Thus, it was understood that the time listed in the notice referred to the time zone of the location where the deposition was noticed to take place.

On Tuesday afternoon, May 31, the day before Wilson's deposition was scheduled to take place, Great Gulf's counsel wrote to counsel for the Pentel Parties:

> As I advised you in writing on Sunday, [Wilson] cannot appear for a deposition in Toronto on June 1st.  Toronto is about six hours from Elliot Lake.  [Wilson] can appear from Elliot Lake from Aube Law Offices in Elliot Lake tomorrow where there is internet access and a private room that can be used for the deposition.  Alternatively, [Wilson] can drive to Toronto and appear at the location you have selected for deposition on Friday, June 3rd.

Ex. B to Second Sellers Aff., ECF No. 146-2 at 4.  Great Gulf's counsel asked the Pentel Parties' counsel to "advise if you would prefer to move forward with the deposition tomorrow or Friday."  Ex. B to Second Sellers Aff., ECF No. 146-2 at 4.

Approximately 30 minutes later, the Pentel Parties' counsel responded that he was

---

was Wilson and Alizadeh's "strategy to do whatever is necessary to have . . . Wilson deposed last" in order to rehabilitate and explain other testimony.  Second Sellers Aff. ¶ 21.  Thus, the Pentel Parties had intentionally noticed Wilson's deposition to occur before Alizadeh's.  Second Sellers Aff. ¶ 21.  Alizadeh appeared for her deposition on June 2, complying with the notice.  *See generally* Ex. J to Second Sellers Aff., ECF No. 146-10.

not available on June 3 and did not know whether the court reporter was available for that date. Ex. B to Second Sellers Aff., ECF No. 146-2 at 3-4. The Pentel Parties' counsel stated he would check with the court reporter as to availability for June 3 and if he could "find someone to cover [his] conflict," but to plan on the depositions taking place as noticed unless informed otherwise. Ex. B to Second Sellers Aff., ECF No. 146-2 at 4.

About an hour after that, Great Gulf's counsel responded:

> [Wilson] has two residences he considers his "home." He rents the property in Barrie and splits time between that property and his home in Elliot Lake. He is presently in Elliot Lake because his wife is a dialysis nurse and is employed in both Elliott Lake and also near Barrie.
>
> Following a severe head injury in April 2021 and a subsequent stroke, his wife cannot drive and relies on [Wilson] for transportation. As such, [Wilson] was unable to both make arrangements to get his wife to an appointment in Elliott Lake tomorrow while driving overnight to Toronto.

Ex. B to Second Sellers Aff., ECF No. 146-2 at 3.

In the evening, the Pentel Parties' counsel informed Great Gulf's counsel that their vendors were not available on June 3 and the Pentel Parties would not be postponing the depositions. Ex. B to Second Sellers Aff., ECF No. 146-2 at 2-3. Great Gulf's counsel responded that Wilson would "appear for the deposition tomorrow from Elliot Lake," but that Great Gulf could make arrangements with another vendor in Toronto for June 3. Ex. B to Second Sellers Aff., ECF No. 146-2 at 2.

### E. Great Gulf & Wilson's June 1 Depositions

Great Gulf did not appear for its 30(b)(6) deposition at 9:00 a.m. Eastern Time on June 1. *See generally* Ex. E to Second Sellers Aff., ECF No. 146-5. At 9:15 a.m., a

record was made that neither Great Gulf's counsel nor its designee had appeared.  Ex. E to Second Sellers Aff., ECF No. 146-5 at 3.

At approximately 9:00 a.m. Central Time/10:00 a.m. Eastern Time, Wilson and Great Gulf's counsel logged in for the remote deposition.  *See* Aff. of Attorney Martin Melang ¶¶ 2-4, ECF No. 135; Ex. G to Second Sellers Aff., ECF No. 146-7 at 3.  After roughly 30 minutes had passed, Great Gulf's counsel contacted counsel for the Pentel Parties, asking if there was a technical issue and inquiring as to when the deposition could be expected to commence.  Melang Aff. ¶ 6; Ex. F to Second Sellers Aff., ECF No. 146-6 at 2; Ex. G to Second Sellers Aff., ECF No. 146-7 at 3.  The Pentel Parties' counsel responded that a record had been made of the non-appearance and "that the court reporter and other vendors had left and were not returning until the time of [Wilson's other] deposition later that afternoon."  Second Sellers Aff. ¶ 19.  Great Gulf attributed the confusion to the fault of the Pentel Parties as the "deposition notice contained no reference to the time zone."  Ex. G to Second Sellers Aff., ECF No. 146-7 at 3; *see* Melang Aff. ¶ 8.  Great Gulf again offered to make Wilson available at the noticed location on June 3.  Ex. G to Second Sellers Aff., ECF No. 146-7 at 3.

At 1:00 p.m. Eastern Time, Wilson appeared for his individual deposition, but from a law office in Elliot Lake, rather than at the noticed location.  Third Wilson Aff. ¶ 3; Melang Aff. ¶ 10; Ex. I to Second Sellers Aff., ECF No. 146-9 at 8-9.  The Pentel Parties declined to proceed with the deposition in light of Wilson's non-compliance with the notice.  Ex. I to Second Sellers Aff., ECF No. 146-9 at 8.

Great Gulf made a record as to why Wilson did not appear at the noticed location.

13

Wilson was asked if there was a reason he could not make it to the noticed location.  Ex. I to Second Sellers Aff., ECF No. 146-9 at 13.  Wilson testified that his wife had "an appointment that [he] could not reschedule" and he had "tried to get someone to be able to get her to that," but was unable to and "had to look after her appointment" himself.  Ex. I to Second Sellers Aff., ECF No. 146-9 at 13.  Wilson further testified that his wife "suffered a fairly severe head injury last year, [and] a subsequent stroke."  Ex. I to Second Sellers Aff., ECF No. 146-9 at 13.  Wilson testified that she was "doing very, very well, but she does have vertigo symptoms, which cause, you know, issues for driving."  Ex. I to Second Sellers Aff., ECF No. 146-9 at 13.  Wilson reiterated that he was willing to make himself available on Friday, June 3, at the noticed location, stating he would "drive through the night on Thursday night" to "be ready for Friday morning."  Ex. I to Second Sellers Aff., ECF No. 146-9 at 13.

## III. ANALYSIS

Great Gulf moves for a protective order, requesting that the Court require Great Gulf's 30(b)(6) designee and Wilson to sit for their depositions "in Minneapolis at the address of [the Pentel Parties'] counsel."  Great Gulf's Mem. in Supp. at 2, ECF No. 140.  The Pentel Parties move to enforce the Court's May 27, 2022 oral order and "bar[] Great Gulf from calling . . . Wilson or Great Gulf's 30(b)(6) designee [as] witnesses at trial or offering any evidence in this matter."  Pentel Parties' Mem. in Supp. of Second Mot. at 21.  The Pentel Parties also seek "their costs and fees incurred in connection with th[eir] motion and the depositions noticed."  Pentel Parties' Mem. in Supp. of Second Mot. at 21.

### A. Legal Standard

These motions implicate the Court's broad discretion in handling pretrial procedure and discovery. *See, e.g.*, *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) ("'A district court has very wide discretion in handling pretrial discovery . . . .'" (quoting *United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014)); *Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges 'are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice.'" (internal quotation marks omitted) (quoting *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2013 WL 6511851, at *3 n.3 (D. Minn. Dec. 12, 2013)).

### 1. Rule 26(c)

Under Rule 26(c), the Court may, upon a showing of good cause, issue a protective order in connection with discovery sought "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see, e.g.*, *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) ("Fed. R. Civ. P. 26(c) requires that 'good cause' be shown for a protective order to be issued."). Among other things, the Court may "specif[y] the terms, including time and place or the allocation of expenses, for the disclosure or discovery," or "prescrib[e] a discovery method other than the one selected by the party seeking discovery." Fed. R. Civ. P. 26(c)(1)(B), (C). "[T]he movant bears the burden of demonstrating the necessity of a protective order." *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn.

15

2013); *see also Gen. Dynamics Corp.*, 481 F.2d at 1212; *May Coating Techs., Inc. v. Illinois Tool Works*, 157 F.R.D. 55, 57 (D. Minn. 1994).   Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *May Coating Techs.*, 157 F.R.D. at 57.

### 2.  Rule 37

Under Rule 37 of the Federal Rules of Civil Procedure, the Court may sanction "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6)" if such person "fails, after being served with proper notice, to appear for that person's deposition."   Fed. R. Civ. P. 37(d)(1)(A)(i).   Available sanctions include those listed in Rule 37(b)(2)(A)(i)-(iv), one of which is "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."   Fed. R. Civ. P. 37(b)(2)(A)(ii); *see* Fed. R. Civ. P. 37(d)(3) ("Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(iv).").   Additionally, an award of "reasonable expenses, including attorney's fees, caused by the failure" is required "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).   "Rule 37 places the burden of proof on the disobedient party to show that his failure is justified or that special circumstances make an award of expenses unjust." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D. N.Y. 2014); *see also, e.g.*, *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

### B.  No Substantial Justification for Non-Appearance

For the second time now, it is undisputed that Great Gulf and Wilson (its self-

described authorized representative and agent) did not appear in person at the noticed deposition location. The Court previously ordered that, in the event Great Gulf or Wilson, failed "to appear in person in Canada for their depositions," "the non-compliant person or entity shall be prohibited from offering any evidence by way of testimony or affidavit for any purpose in this case." Tr. 26:6-10; *accord* May 27, 2022 Ct. Minutes. The time to object to that order has passed and there was no objection by Great Gulf. *See* D. Minn. LR 72.2(a)(1); *cf.* Great Gulf's Mem. in Supp. at 7 ("Plaintiff is aware that the Minute Entry is explicit in the sanctions for the failure of Wilson to appear to be deposed."). The Court was clear. Great Gulf and Wilson had one—and only one— chance to make good on the representation that they would have fully cooperated in rescheduling the previously noticed depositions for which they failed to appear.

Great Gulf asserts that "a reasonable person . . . would conclude that [the Pentel Parties] attempted to frustrate, rather than to actually take Wilson's deposition" and the Pentel Parties "have attempted to catch [it] in a sanctions trap." Great Gulf's Mem. in Supp. at 7. According to Great Gulf, the Pentel Parties "completely rebuffed [its] reasonable attempts to schedule the depositions at issue" and "intentionally scheduled the deposition for a time at a place it knew Wilson could not attend." Great Gulf's Mem. in Supp. at 7. Great Gulf chides the Pentel Parties for not acquiescing to Wilson's appearance from the Canadian law firm rather than the noticed location and again faults the Pentel Parties for "fail[ing] to note the time zone of the deposition." Great Gulf's Mem. in Supp. at 7. Great Gulf further maintains that the depositions could have occurred on Friday, June 3, "when . . . Wilson appeared in person in Toronto for another

deposition."  Great Gulf's Mem. in Supp. at 7.  Great Gulf requests that the Court establish a date certain for Great Gulf's 30(b)(6) deposition and Wilson's deposition.[7]

As the Pentel Parties aptly point out, "Rule 26(c) is not a basis for a party to seek protection from the consequences of its actions."  Pentel Parties' Opp'n at 2, ECF No. 149.  *Cf.* Fed. R. Civ. P. 37(d)(2) ("A failure . . .  [to appear for a deposition] is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a *pending* motion for a protective order under Rule 26(c)." (emphasis added)).  Based on the record before the Court, the Court again finds that Wilson is not credible for purposes of these motions and the failure of Great Gulf and Wilson to appear in compliance with the deposition notices was not substantially justified.

Recall that Wilson previously stated under penalty of perjury that he would have fully cooperated with the Pentel Parties' efforts to reschedule the depositions.  Wilson, however, attempted to limit his availability to just two of the seven days on account of his personal schedule and dictate the location from which he would appear.  Wilson did so with *full knowledge of the previous unacceptability of his failure to appear from the noticed location*.

As to the reason for his failure to appear from the noticed location, Wilson's first explanation as to why he was appearing from Elliot Lake was that his wife needed to attend an appointment that could not be rescheduled and he was unable to arrange alternative transportation.  There is little to no information in the record as to the nature

---

[7] Wilson was present at the July 11 hearing.  *See* Great Gulf's Resp. at 5, ECF No. 156; Great Gulf's Mem. in Supp. at 8.  At the hearing, Great Gulf's counsel stated that Wilson could be deposed in person at the office of the Pentel Parties' counsel that afternoon or the following morning, and that Wilson would make himself available for the rest of the week if necessary.  *See also* Great Gulf's Resp. at 5; Great Gulf's Mem. in Supp. at 8.

of his wife's appointment, e.g., if this was a personal appointment of hers or a work-related appointment, or the extent of Wilson's efforts to arrange for alternative transportation.

In a declaration Great Gulf filed in opposition to the Pentel Parties' motion, Wilson provided a different explanation. Wilson states that it was due to his role as a caregiver to his wife and her symptoms that he "cannot just leave on short notice and travel to a location far away leaving her alone" and "need[s] time to arrange for someone else familiar with her symptoms to stay with her while [he is] away." Third Wilson Aff. ¶ 5. Wilson states that this is "why [he] could not simply take two days out of [his] life as a caretaker and drive to Toronto to be deposed on the 1st of June." Third Wilson Aff. ¶ 5. There is no mention of the appointment or an inability to arrange for transportation.

Moreover, Wilson states in his affidavit that his wife had a recurrence of her symptoms in "June of 2022" and describes an unsettling incident that took place on June 24, 2022, three weeks *after* his deposition. Third Wilson Aff. ¶¶ 5-6. In his affidavit, Wilson maintains that this recurrent symptomology was the reason why he could not "just leave on short notice and travel to a location far away leaving her alone." Third Wilson Aff. ¶ 5. Yet, at the outset, Wilson limited his availability to two days based on his wife's work schedule, not these caregiving functions and, on June 1, the day of his deposition, Wilson testified that his wife was doing "very, very well" except for vertigo symptoms that interfered with her ability to drive.

This Court has found Wilson not credible in the past, and that finding has not been challenged. Wilson's explanations and actions lead this Court to find again that he is not

credible for purposes of the instant motions.  To be clear, the Court is not suggesting that Wilson is not credible as to the existence and nature of his wife's symptoms, his concern for his wife's health, or his desire to support her.  Rather, it is the shifting nature of Wilson's explanations viewed in conjunction with the timeline of events and self-imposed restrictions on availability that cast doubt on Wilson's credibility as a whole and the genuineness of his purported efforts to cooperate with anything less than a deposition on his own terms.[8]

Nor can Great Gulf avoid its obligation to produce a knowledgeable designee under Rule 30(b)(6) based on Wilson's scheduling preferences and availability.  "[Great Gulf's] duty is not to present [Wilson] for the 30(b)(6) deposition, but to present a prepared and qualified individual."  *Omega Hosp., LLC v. Cmty.  Ins. Co.*, No. 14-cv-2264, 2015 WL 5020412, at *5 (E.D. La. Aug. 20, 2015) (quotation omitted); *see* Fed. R. Civ. P. 30(b)(6) ("The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and may set out the matters on which each person designated will testify.").

Great Gulf contends that it "is not a large company with many different agents able to testify with the knowledge required to do so" and that "Wilson alone has been involved in all aspects of the dispute regarding the aircraft, and is the appropriate person

---

[8] Indeed, Great Gulf went so far as to notice a deposition of Wilson *itself*  for the Pentel Parties to take on June 3.  Great Gulf's Mem. in Supp. at 6 ("In an attempt to finally take these depositions, [Great Gulf's] counsel [n]oticed Wilson'[s] depositions for a law office in Toronto on Friday, June 3."); *see generally* Ex. P to Second Sellers Aff., ECF No. 146-16; *see also generally* Ex. Q to Second Sellers Aff., ECF No. 146-17.  As best as the Court is able to recall, it has not previously encountered a situation in which a deponent, having failed to appear in compliance with a deposition notice, subsequently notices his own deposition as "to be certain" the party seeking the deposition "ha[s] the opportunity to take" it.  Ex. Q to Second Sellers Aff., ECF No. 146-17 at 3.

to testify." Great Gulf's Resp. at 4. But, "[t]he testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents." *List v. Carwell*, No. 18-cv-2253 (DSD/TNL), 2020 WL 5988514, at *13 (D. Minn. Oct. 9, 2020 (quoting *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C. 1996)); *accord Klein v. Affiliated Grp., Inc.*, No. 18-cv-949 (DWF/ECW), 2019 WL 246768, at *9 (D. Minn. Jan. 17, 2019); *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. 2008); *see also* Fed. R. Civ. P. 30(b)(6) ("The persons designated must testify about information known or reasonably available to the organization."). "A Rule 30(b)(6) designee is not required to have personal knowledge on the designated subject matter." *List*, 2020 WL 5988514, at *13 (quoting *Great Am. Ins. Co.*, 251 F.R.D. at 538). "If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *Id.* (quoting *Taylor*, 166 F.R.D. at 361). "Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Id.* (quoting *Taylor*, 166 F.R.D. at 361); *accord Klein*, 2019 WL 246768, at *9; *Great Am. Ins. Co.*, 251 F.R.D. at 539. It was Great Gulf's choice to persist in proffering Wilson as its designee, fully aware Wilson was in Elliot Lake on June 1, the likelihood of his non-appearance at the noticed deposition location, and the risk of such non-compliance.

Further, Great Gulf's contention that the Pentel Parties' "failure to take . . . Wilson's deposition initially is a result of [their] own counsel[']s failure to note the time

zone on the deposition notice" rings hollow based on the parties' course of conduct. Great Gulf's Mem. in Supp. at 7; *see also, e.g.*, Great Gulf's Mem. in Supp. at 6 ("[The Pentel Parties'] counsel later took the position that the notice meant Eastern Time, despite that the notices did not specify the time zone and that the deposing attorney was located in the Central Time Zone." (citation omitted)); Great Gulf's Resp. at 3 ("Any confusion about the timing of the first deposition is the fault of [the Pentel Parties] for not specifying the proper time zone."). Great Gulf claims confusion over the start time of the June 1 deposition despite the parties' prior correspondence addressing the time-zone issue and the fact that Great Gulf, its designee (Wilson), and its counsel previously appeared at the appropriate time[9] in response to the prior deposition notices. *See, e.g.*, Ex. F to Sellers Aff., ECF No. 104 at 27 ("Proceedings commenced at 9:04 A.M.") (Wilson deposition, March 29, 2022, noticed for 9:00 a.m.), Ex. I to Sellers Aff., ECF No. 104 at 43 ("Proceedings commenced at 1:06 P.M.") (Great Gulf 30(b)(6) deposition, March 30, 2022, noticed for 1:00 p.m.). While the better and preferred practice may have been to include the applicable time zone in the notice, the Court is hard-pressed to conclude that the apparent confusion over the start time of the re-noticed deposition at the same location as the previously noticed deposition was reasonable under the circumstances.

Similarly, Great Gulf's insistence that the depositions could have taken place on Friday, June 3, was not a realistic solution. The Pentel Parties' counsel and their vendors were not available that day. Wilson's true availability was also questionable. Great Gulf

---

[9] Albeit not from the appropriate place.

itself states that Wilson "was in Toronto [that day] *for another deposition*."  Great Gulf's Mem. in Supp. at 7 (emphasis added).  Great Gulf's 30(b)(6) deposition and Wilson's own deposition were each scheduled for half a day.  Even if the Pentel Parties' counsel could have covered the conflict and alternative vendors arranged, Great Gulf's purported solution was thus still subject to Wilson's self-imposed scheduling restraints.

Based on the foregoing and in light of the litigation history of this case, the Court concludes that the failure of Great Gulf and Wilson to appear for their depositions in compliance with the deposition notices for a second time was not substantially justified. Accordingly, the Court grants the Pentel Parties' motion and denies Great Gulf's motion.

As the Court stated at the May 27 hearing, "[t]he purpose of sanctions is to 'penalize those whose conduct may be deemed to warrant' them and 'deter those who might be tempted to such conduct in the absence of such a deterrent.'"  *Security Nat'l Bank of Sioux City, Iowa v. Day*, 800 F.3d 936, 942 (8th Cir. 2015) (quoting *Nat'l Hockey League v. Metro Hockey Club*, 427 U.S. 639, 643 (1976)); *accord* Tr. 23:15-21. Exclusion of evidence is not a sanction that the Court lightly imposes.  *See, e.g.*, *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 645 (8th Cir. 2022) ("[E]xclusion of evidence 'is a harsh penalty and should be used sparingly.'" (quoting *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)).  Here, the Court is confronted with a litigant who has twice[10] been subject to monetary sanctions and who was expressly warned as to the

---

[10] The first time was in connection with a prior motion to compel and the second was in connection with the previously noticed depositions.  *See generally* ECF No. 79; May 27, 2022 Ct. Minutes at 1; *see also supra* n.5.  As of the May 27 hearing, payment of the attorney fees in connection with the motion to compel was six months overdue.  *See* Tr. 7:6-14.  At the July 11 hearing, Great Gulf's counsel informed the Court that both amounts have now been paid.  *Cf. supra* n.5.

consequence of non-compliance.  Yet, these lesser deterrents appear to have had little to no effect.[11]  The Court's May 27 oral order put Great Gulf and Wilson on notice that the remedy for non-compliance would be to prohibit them from offering any evidence by way of testimony or affidavit for any purpose in this case.  No appeal from that order was taken and it remains in full force and effect.  For the reasons stated above, and in order to prevent non-complying parties, including an individual with credibility problems, from dictating through inappropriate machinations the place and time of their depositions, such sanction is justified.  Therefore, consistent with the Court's prior order, Great Gulf and Wilson shall be prohibited from offering any evidence by way of testimony or affidavit for any purpose in this case.  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii), (d)(3).

### C. Expenses & Attorney Fees

As stated above, *see supra* Section III.A.2, Rule 37 authorizes sanctions for failure to appear for a deposition, including an award of "reasonable expenses, including attorney's fees, caused by the failure unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(3).  The Court has concluded that the failure of Great Gulf and Wilson to appear for their depositions in compliance with the deposition notices was not substantially justified.  Accordingly, Great Gulf shall bear the expenses incurred by the Pentel Parties in arranging the June 1 depositions of Great Gulf and Wilson.  Great Gulf shall also bear the reasonable attorney fees and costs incurred by the Pentel Parties in bringing this motion for sanctions and responding to Great Gulf's motion for a protective order.  *See also* Fed. R. Civ. P.

---

[11] *See supra* n.8.

26(c)(3), 37(a)(5)(B).

Such expenses, attorney fees, and costs shall be set forth by the Pentel Parties in an affidavit of counsel filed no later than August 1, 2022. Great Gulf may respond to the requested amounts no later than August 15, 2022.

## IV. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Great Gulf's Motion for a Protective Order, ECF No. 133, is **DENIED**.

2. The Pentel Parties' Second Motion to Enforce Court Order and for Sanctions, ECF No. 142, is **GRANTED**.

3. Great Gulf and Troy Wilson shall be prohibited from offering any evidence by way of testimony or affidavit for any purpose in this case.

4. **On or before August 1, 2022**, the Pentel Parties shall set forth in an affidavit of counsel the expenses incurred in arranging the June 1 depositions of Great Gulf and Wilson and the attorney fees and costs incurred in bringing this motion for sanctions and responding to Great Gulf's motion for a protective order.

5. **On or before August 15, 2022**, Great Gulf may respond to the requested amounts.

6. All prior consistent orders remain in full force and effect.

[Continued on next page.]

7.  Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: July____13____, 2022                    _____*s/ Tony N. Leung*_____
                                               Tony N. Leung
                                               United States Magistrate Judge
                                               District of Minnesota


                                               *Great Gulf Corp. v. Graham et al.*
                                               Case No. 20-cv-1835 (PJS/TNL)